RECEIVED
JAN 9 - 2017
AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| v. | : | Criminal No. 17-7 |
| LAWRENCE ACKERMAN and SERGIO ACOSTA | : | Title 18, United States Code, Sections 1347 and 1349 |

# INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges as follows:

## COUNT ONE

**(Conspiracy to Defraud Horizon Blue Cross Blue Shield As a Health Care Benefit Program)**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges that:

### Background

At all times relevant to this Indictment:

1. **The Defendants and Other Parties**

    a. Local 2326 of the International Auto Workers Union (UAW) (hereinafter "Local 2326"), headquartered in Edison, New Jersey, was a labor organization as that term is defined in Title 29, United States Code, Sections 142(3), 152(5), 402(i) and (j) and an employee organization as defined in Title 29, United States Code, Section 1002(4). Local 2326 represented, sought to represent, and would have admitted to membership employees engaged in an industry and activity affecting commerce, that is, automobile manufacturing, auto parts industry, and related businesses, with the meaning of those terms

as defined by Title 29, United States Code, Sections 1002 and 1003.

### Local 2326 Health Care Plan

b. In or about January 2001, Local 2326 and its employers, whose employees Local 2326 represented pursuant to collective bargaining agreements ("Signatory Employers"), established and maintained the UAW Group Health and Welfare Plan (hereinafter "The Benefit Plan") which was an employee welfare benefit plan subject to Title I of the Employee Retirement and Income Security Act of 1974 ("ERISA"), as defined by Title 29, United States Code, Section 1002(1) and 1003(a) and a health care benefit program as defined by Title 18, United States Code, Section 24(b). The Benefit Plan was a program created to pay for the delivery of health care benefits for Signatory Employers' employees and members of Local 2326. Staff employees of Local 2326 were also eligible for health care benefits paid by the Benefit Plan. The Benefit Plan was governed by a Trust Agreement that established the guidelines by which the Plan was conducted.

c. In or about July 2009, the Benefit Plan entered into an insurance contract with Horizon Blue Cross Blue Shield of New Jersey ("Horizon BCBS"). Horizon BCBS was also a health care benefit program as defined by Title 18, United States Code, Section 24(b). Under the contract, Horizon BCBS was responsible for paying claims for medical services incurred by eligible participants and their beneficiaries of the Benefit Plan. The Horizon BCBS policy specifically provided insurance payments for only full-time employees of Signatory Employer companies and Local 2326 employees who

were eligible to participate in the Benefit Plan. The Benefit Plan remitted premiums to Horizon BCBS that were funded by contributions from Signatory Employers.

      d. On or about June 30, 2011, the policy coverage under the Horizon BCBS plan ended. However, Horizon BCBS continued to honor, and pay for, medical expenses incurred, based upon a fraudulent CBA with ABA/AMA, on or before the June 30, 2011 deadline. On or about July 1, 2011, the Benefit Plan and Horizon BCBS entered into an Administrative Services Only agreement (hereinafter, "ASO"). Under the ASO, Horizon BCBS was responsible only for the processing and billing of the total cost of the claims submitted to the self-insured Benefit Plan after July 1, 2011.

      e. Defendant SERGIO ACOSTA (hereinafter ACOSTA) was an employee of Local 2326 and its President from at least 2002 until at least 2008. During this time period, ACOSTA was responsible for conducting the day-to-day operations of the union, as well as the Benefit Plan. In or around 2008, ACOSTA became a representative and employee of the UAW International Union. Yet, he continued to serve as the union's trustee to the Benefit Plan. Having also assumed the responsibilities of a trustee and a fiduciary with respect to the Benefit Plan, ACOSTA was required by ERISA to discharge his duties with respect to the Benefit Plan: (1) solely in the interest of the eligible participants and beneficiaries; and for the exclusive purpose of (2) providing benefits to eligible participants and their beneficiaries; and defraying reasonable expenses of administering the plan; (3) with care, skill, prudence

and diligence; and (4) in accordance with the documents and instruments governing the health plan, pursuant to Title 29, United States Code, Section 1104(a)(1).

  f. ACOSTA was also prohibited by ERISA from dealing with the assets of a Benefit Plan in his own interest or for his own account and from acting in any transaction involving the Benefit Plan on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, pursuant to Title 29, United States Code, Section 1106. Pursuant to the Trust Agreement, ACOSTA was required to perform the following inter alia: (i) to make determinations respecting eligibility for coverage of participants and beneficiaries based upon the provisions of the Benefit Plan; (ii) to report the identity of eligible participants and beneficiaries to the Plan's group insurance providers and pay for that coverage with Benefit Plan assets; (iii) to negotiate insurance contracts to provide coverage to eligible participants and beneficiaries pursuant to the Benefit Plan's benefit provisions; and (iv) to collect employer contributions in order to provide the Benefit Plan with sufficient assets to pay for the coverage provided to its participants and beneficiaries.

  g. On or about October 25, 2011, ACOSTA resigned as the trustee to the Benefit Plan but continued to exercise discretionary control in trustee meetings, and act in an advisory capacity with respect to the management of the Benefit Plan as a de facto fiduciary of the Benefit Plan, through at least December 2011. He remained a UAW International representative and, in that

capacity was an advisor to Local 2326.

h. Defendant LAWRENCE ACKERMAN (hereinafter ACKERMAN) was the Chief Operating Officer of Atlantic Business Associates (ABA), Atlantic Medical Associates (AMA), AMLaw, Atlantic International Group (AIG) and Pro-Tech Automotive Services. In actuality ABA and AMA were "shell" companies created by ACKERMAN through which he marketed health insurance nationally to persons who were not in fact employees of ABA/AMA. He used ABA/AMA to create the appearance of employment status for individuals who were improperly seeking health care coverage through the Benefit Plan. ACKERMAN treated ABA and AMA essentially as one and the same entity. In January 2004, ACKERMAN under ABA entered into a sham "Participation Agreement" with ACOSTA and Local 2326 for the purpose of permitting the alleged employees of ABA to participate in the Benefit Plan. ACKERMAN's ineligible participants were referred to by Horizon BCBS as sub groups 23 and 24.

### Collective Bargaining Agreement

i. On or about April 1, 2008, ACKERMAN, on behalf of ABA, entered into a collective bargaining agreement (2008 CBA) with Local 2326 as authorized by ACOSTA. The 2008 CBA contained rules for the union and the Signatory Employer governing, among other things, wages, hours and other conditions of employment for employees subject to the agreement, including the provision of health care benefits. The term of the 2008 CBA extended

until April 1, 2011, and became automatically renewable on a year to year basis. At the time of the signing and thereafter, neither ABA nor AMA had any full-time employees eligible for participation in the Benefit Plan, as required by the 2008 CBA and the Benefit Plan's Trust Agreement. Moreover, ACOSTA never actually interacted with ABA and AMA or eligible employees in regard to wages, hours, or other conditions of employment, except for his approval of the enrollment of purported employees of ABA and AMA in the Benefit Plan.

 j. Individual #1 was an employee of ACKERMAN and his office manager. Individual #1 supervised the enrollment of those persons who sought health care coverage through ACKERMAN. Individual #1 was aware that the enrollees were not employees of ACKERMAN, nor ABA, or AMA, and hence ineligible for participation in the Benefit Plan.

 k. Individual #2 was an employee of the Local 2326 and a subordinate to the ACOSTA. Individual #2's duties, among others, were to accept applicant enrollment forms submitted by ABA/AMA staff employees which contained personal and family data of ineligible Benefit Plan participants, and input that information into the Horizon BCBS data base.

 l. Individual #3 was an employee of the Local 2326 and held the position of President beginning in or around April 1, 2008. Individual #3 signed the 2008 CBA with ACKERMAN and ABA, at the direction of ACOSTA.

 2. From in or around January 2009 through in or about November 30, 2013, in Essex County, in the District of New Jersey and

elsewhere, the defendants,

LAWRENCE ACKERMAN and
SERGIO ACOSTA,

did knowingly and intentionally conspire and agree with each other, and others, to commit an offense against the United States, namely: to willfully execute and attempt to execute a scheme to defraud Horizon BCBS and to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Horizon BCBS, in connection with the delivery of and payment for health care benefits and services to the Benefit Plan; that is, a scheme involving the enrollment of ineligible participants who were purported employees of ABA and AMA, both sham companies, in the Benefit Plan and resulting in the loss of approximately five million, six hundred thousand dollars ($5,600,000) by Horizon BCBS because of its payment of health care benefits for persons not eligible to receive such benefits, contrary to Title 18, United States Code, Section 1347.

**OBJECT OF THE CONSPIRACY**

3. It was the object of the conspiracy that ACOSTA and ACKERMAN, pursuant to a sham Participant Agreement and CBA, would use ABA and AMA for the purpose of defrauding Horizon BCBS of money and property by permitting individuals, who were ineligible participants in the Benefit Plan to submit health benefit care claims for payment under the Benefit Plan's contract of insurance with Horizon BCBS.

## MANNER AND MEANS

4. It was a part of the conspiracy that, in or around 2004, ACKERMAN and ACOSTA entered into a Participation Agreement, and thereafter the 2008 CBA which purported to authorize and permit ineligible persons enrolled by ACKERMAN to gain membership in Local 2326, and participate in the Benefit Plan in connection with the payment and delivery of health care benefits to such participants and their beneficiaries.

5. It was a further part of the conspiracy that ACKERMAN, Individual #1 and others provided enrollment forms to ineligible applicants to obtain personal information necessary for submission to Horizon BCBS, for authorizing coverage under the Benefit Plan;

6. It was a further part of the conspiracy that Individual #1, and other staff members of ACKERMAN's office staff, submitted these enrollment forms to Individual #2 who, at the direction of ACOSTA, inputted that information into the Horizon BCBS data bank;

7. It was a further part of the conspiracy that, other than the enrollment of ineligible employees as Benefit Plan participants, ACOSTA never interacted with ABA/AMA as employers with respect to the hours, wages and other conditions of employment on behalf of the purported employees of ABA or AMA as provided in the 2008 CBA;

8. It was a further part of the conspiracy that, due to the number of ineligible enrollees permitted to use the Benefit Plan and the additional

funding tendered to the Benefit Plan by the ineligible enrollees, ACOSTA withheld contributions on behalf of his Local 2326 staff employees, who nevertheless participated in the Benefit Plan, to the financial detriment of the Benefit Plan.

9. It was a further part of the conspiracy that, ACOSTA, by his silence at the December 2011 trustee meeting, lulled the trustees into believing that the alleged employees of ABA/AMA were eligible to participate in the services of the Benefit Plan.

10. It was a further part of the conspiracy that, on or about October 9, 2012, ACKERMAN submitted a $1500 check from AMA to cover the balance due on the medical coverage of his alleged employee participants in the Benefit Plan.

**Overt Acts**

11. In furtherance of the conspiracy and to effect its unlawful object, LAWRENCE ACKERMAN and SERGIO ACOSTA committed, and caused to be committed, the following overt acts, in the District of New Jersey and elsewhere:

   a. On or about January 20, 2011, a premium check for $800,000 was issued from the Benefit Plan to Horizon BCBS to cover, in part, the ineligible participants enrolled by ACKERMAN;

   b. On or about March 21, 2011, a premium check for $900,000 was issued from the Benefit Plan to Horizon BCBS to cover, in part, the ineligible participants enrolled by ACKERMAN;

c. In or around June, 2011, AMA sponsored approximately 644 ineligible participants into the Benefit Plan;

d. On or about May 25, 2011, a premium check for $575,000 was issued from the Benefit Plan to Horizon BCBS to cover, in part, the ineligible participants enrolled by ACKERMAN;

e. On or about January 13, 2012, Horizon BCBS paid $42,281 to settle multiple claims of an ineligible participant enrolled by ACKERMAN;

f. On or about February 17, 2012, Horizon paid $60,922 to settle multiple claims of an ineligible participant enrolled by ACKERMAN;

g. On or about January 25, 2013, Horizon paid $1,649 to settle multiple claims of an ineligible participant enrolled by ACKERMAN;

h. On or about, August 6, 2013, Horizon paid $ 5,200 to settle multiple claims of an ineligible participant enrolled by ACKERMAN;

i. On or about November 28, 2013, Horizon paid $351 to settle multiple claims of an ineligible participant enrolled by ACKERMAN.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### (Conspiracy to Defraud Benefit Fund as Self-Insured Health Care Benefit Program)

12. The allegations set forth in Paragraphs 1(a) through 1(l) of Count One are hereby realleged, as if set forth fully herein.

13. From on or about July 1, 2011, through approximately at least December 2012, in Essex County, the District of New Jersey and elsewhere, defendants,

LAWRENCE ACKERMAN and
SERGIO ACOSTA,

did knowingly and intentionally conspire and agree with each other, and others, to commit an offense against the United States, namely: to willfully execute and attempt to execute a scheme to defraud the Benefit Plan and to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of the Benefit Plan, in connection with the delivery of and payment for health care benefits and services; that is, a scheme involving the enrollment of ineligible participants who were purported employees of ABA and AMA, both sham companies, in the Benefit Plan and resulting in the loss of approximately one million dollars ($1,000,000) by the Benefit Plan because of its payment of health care benefits for persons not eligible to receive such benefits, contrary to Title 18, United States Code, section 1347.

~ 11 ~

## OBJECT OF THE CONSPIRACY

14.  It was the object of the conspiracy that, pursuant to an unlawful collective bargaining agreement, ACOSTA and ACKERMAN would and did use both ABA and AMA for the purpose of defrauding the Local 2326 self-insured Benefit Plan of money and property by permitting individuals, who were ineligible participants in the Benefit Plan, to submit claims for payment of medical benefits for themselves and their beneficiaries.

## MANNER and MEANS

15.  It was a part of the conspiracy that, on or about April 1, 2011, a CBA between Local 2326 and ABA automatically renewed for the period of April 2011 through April 2012;

16.  It was a further part of the conspiracy that, other than the enrollment of ineligible employees as Benefit Plan participants, ACOSTA never performed any bargaining unit services or interacted with ABA or AMA employees with respect to their hours, wages and other conditions of employment, as provided for in the 2008 CBA;

17.  It was a further part of the conspiracy that ACKERMAN, Individual #1 and others, provided enrollment forms to ineligible applicants to obtain personal information necessary to join the Benefit Plan for medical care coverage;

18. It was a further part of the conspiracy that Individual #1, and other employees of ABA/AMA and AIG, presented the above described enrollment forms to Individual #2 at Local 2326, who inputted that information into the Horizon BCBS data bank, at the direction of ACOSTA;

19. It was a further part of the conspiracy that ABA/AMA enrollees into the Benefit Plan submitted claims for payment, despite being ineligible to receive said benefits, as provided for in the CBA and Trust Agreement;

20. It was a further part of the conspiracy that ACKERMAN received and retained profits from the enrollment of ineligible enrollees into the Benefit Plan;

21. It was a further part of the conspiracy that ACOSTA ignored delinquencies to the Benefit Plan, and to the union, regarding premiums and dues owed by ACKERMAN on behalf of his ineligible participants;

22. It was a further part of the conspiracy that, due to the number of ineligible enrollees enrolled by ACKERMAN and the additional funding of the Benefit Plan by said ineligible enrollees, ACOSTA withheld employer contributions to the Benefit Plan on behalf of Local 2326 employees who still participated in the Benefit Plan, to the detriment of the Benefit Plan;

23. It was a further part of the conspiracy that ACOSTA permitted the Benefit Plan to continue to pay off claims for the ineligible participants of ACKERMAN, even after the self-insured Benefit Plan was forced to cease accepting claims, in and around October, 2011, to the detriment of the Benefit Plan.

**Overt Act**

24. In furtherance of the conspiracy and to effect its unlawful object, defendants LAWRENCE ACKERMAN and SERGIO ACOSTA committed and caused to be committed the following overt acts, in the District of New Jersey and elsewhere:

    a. On or about July 22, 2011, a premium check for $300,000 was issued by ACKERMAN to Local 2326 and deposited into the self-insured Benefit Plan, to cover his ineligible enrollees;

    b. On or about August 9, 2011, a premium check for $231,512 was issued by ACKERMAN to Local 2326 and deposited into the self-insured Benefit Plan, to cover his ineligible enrollees;

    c. On or about September 11, 2011, approximately 327 ineligible participants of ACKERMAN's remained on the self-insured Benefit Plan;

    d. On or about September 13, 2011, a premium check for $137,945 was issued by ACKERMAN to the self-insured Benefit Plan to cover his ineligible enrollees;

    e. On or about September 27, 2011, a premium check for $200,000 was issued by ACKERMAN to Local 2326 and deposited into the Benefit Plan to cover his ineligible enrollees;

    f. On or about October 4, 2011, a premium check for $50,000 was issued by ACKERMAN to Local 2326 and deposited into the Benefit Plan to cover his ineligible enrollees;

g. On or about November 7, 2011, the Benefit Plan paid $3,484 to settle a claim from an ineligible participant enrolled by ACKERMAN;

h. On or about November 18, 2011, the Benefit Plan paid $6,885 to settle a claim from an ineligible participant enrolled by ACKERMAN;

i. On or about December 1, 2011, ACOSTA participated in a Benefit Plan Trustee meeting as a UAW International representative and offered advisory assistance to the Plan trustees;

j. On or about December 22, 2011, the Benefit Plan paid $7,210 to settle a claim from an ineligible participant enrolled by ACKERMAN;

k. On or about February 22, 2012, the Benefit Plan paid $3,800 to settle a claim from an ineligible participant enrolled by ACKERMAN;

l. On or about August 21, 2012, the Benefit Plan paid $1,201 to settle a claim from an ineligible participant enrolled by ACKERMAN;

All in violation of Title 18, United States Code, Section 1349.

Paul J. Fishman
United States Attorney

CASE NUMBER: 17-7 (MAS)

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

LAWRENCE ACKERMAN &
SERGIO ACOSTA

# INDICTMENT

18 U.S.C. Sections 1347, 1349

**PAUL J. FISHMAN**
UNITED STATES ATTORNEY, NEWARK, NEW JERSEY

V. GRADY O'MALLEY
SENIOR LITIGATION COUNSEL
NEWARK, NEW JERSEY
973-645-2725